## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICK J. EMERICK, | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 3:03-266 |
| v. | ) |
| | ) |
| NORFOLK SOUTHERN RAILWAY | ) JUDGE KIM R. GIBSON |
| COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER

**GIBSON, J.**

## I. INTRODUCTION

Now before the Court is the Motion for Summary Judgment from Norfolk Southern Railway Company ("Norfolk" or "Defendant") and Memorandum of Law in support thereof (Document Nos. 22 & 23, respectively), the Response and Memorandum of Law in Opposition to the Motion filed by Nick J. Emerick ("Emerick" or "Plaintiff") (Document Nos. 27 & 28, respectively), and the Reply to Plaintiff's Response filed by Norfolk with an accompanying Memorandum of Law (Document Nos. 38 & 37, respectively).

Plaintiff's December 8, 2003, Complaint alleges violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* Document No. 1, ¶ 1. Implicit in Plaintiff's claims is also an allegation of impermissible retaliatory firing. *Id.* at ¶¶ 17-18. The lawsuit arises from Plaintiff's prior employment with Defendant and seeks injunctive relief, compensatory damages, punitive damages, back pay with interest, and costs and fees. *Id.* at ¶ 22. The Court asserts its

1

jurisdiction to decide the federal question posed in this litigation pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), as well as 42 U.S.C. § 2000e-5(f)(3). Venue is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3). Upon consideration of the relevant arguments and evidence, the Court, for the reasons stated below, hereby grants the Motion and directs that summary judgment be entered against Plaintiff.

## II. BACKGROUND AND MATERIAL FACTS NOT IN DISPUTE[1]

Plaintiff was employed as a boilermaker at Norfolk's Juniata Locomotive Shop in Pennsylvania and was represented by the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, which was party to a collective bargaining agreement with Defendant. Emerick's job required that he ascend stairs and ladders, climb over, walk across, and work atop locomotives 25-30 feet in height, crawl into tight spaces, and squat for various periods of time. He was also required to regularly lift objects weighing over fifty pounds. Because of the physical demands associated with this position, Norfolk implemented a mandatory pre-shift warm-up and stretching routine designed to prepare employees' joints and muscles for the rigors of their work. The exercises are far less demanding than a boilermaker's actual job duties.

Emerick's working gang was led by James A. Patterson ("Patterson"), who conducted the pre-shift exercise regimen, held daily safety meetings, and assigned work in the locomotive shop to

---

[1] The factual history recounted in this section is based upon Statements of Material Facts submitted pursuant to Local Rule 56.1, any objections and counter-statements thereto, and any consistencies between the initial pleadings filed by the Parties. Although no indentations or marks are used, the Court has, where appropriate, directly quoted the language of the Parties. Any fact not present here has been deemed by the Court to be immaterial, lacking adequate evidentiary support, disputed for purposes of the present Motion, or argumentative and not factual. Additionally, the non-moving party concedes anything in the movant's Statement of Material Facts to which the non-moving party does not directly respond. L.R. 56.1(E). Some facts may not be in the same form as presented because the Court has concluded that the record did not support the fact as submitted.

Plaintiff's shift of boilermakers. When asked by Patterson about his apparent lack of effort during a particular pre-shift warm-up, Emerick replied that he could obtain a doctor's letter that would excuse him from further exercises. Shortly thereafter, on October 23, 2002, Plaintiff provided Patterson a letter from his personal physician, Dr. Paul A. Raymond ("Dr. Raymond"), stating that Emerick required medical treatment but, in Dr. Raymond's professional opinion, could fully perform the duties of his job. Dr. Raymond also wrote, however, that the pre-shift exercises aggravated Emerick's medical condition and suggested that Norfolk allow Plaintiff to perform his own modified exercises.

Patterson passed the note to his immediate supervisor, Robert J. McManus ("McManus"), the General Foreman at Juniata. McManus forwarded the letter to his supervisor, Calvin Cox ("Cox"), who in turn sent it to Norfolk's medical department, which instructed Cox to place Emerick on medical hold. At Cox's request, McManus instructed Emerick to meet with Norfolk's medical department. Whenever Norfolk acquires information suggesting that an employee may not be able to safely perform his duties, its standard practice is to hold that employee out of service until the medical department can determine the employee's overall fitness. In Emerick's case, Norfolk's medical department was concerned that if mild warm-up stretches aggravated Plaintiff's medical condition, it was possible that these conditions could hinder Emerick's ability to perform the more strenuous duties of his job. Norfolk therefore placed Emerick on medical hold on November 8, 2002.

Norfolk never contacted Plaintiff to schedule a medical examination. Instead, the company requested information from Emerick on four separate occasions to determine his fitness for service

3

and to ascertain what, if any, accommodation was required. They first sent Emerick a letter on November 8, 2002, requesting copies of all medical records pertaining to Emerick's neck and back conditions and a work release describing any necessary restrictions or accommodations. Sometime around mid-December, Norfolk received Plaintiff's medical records from the VA Hospital and one Dr. Opida ("the VA Records"). Considering these records insufficient, however, Norfolk sent Plaintiff a second letter on December 22, 2002, that acknowledged receipt of the VA Records, informed Plaintiff of their inadequacy, and requested updated records from Plaintiff's treating physician. Having received no further response, Norfolk sent Plaintiff a third letter on January 24, 2003, again requesting additional information in order to determine his physical fitness. A fourth letter, dated April 8, 2003, informed Plaintiff that the information previously requested had not been received, granted Plaintiff ten days in which to provide the appropriate medical records, and noted that any failure to do so might subject Emerick to disciplinary action. It is undisputed that Emerick received all four letters.

Defendant also sent two letters to Dr. Raymond. The first, dated January 7, 2003, expressed concern that Dr. Raymond was unfamiliar with Emerick's job functions and the nature of the pre-shift exercise regimen. It included information relevant to both and asked that Dr. Raymond respond with his concerns about Plaintiff's performance of specific exercises and suggestions on how the exercise regimen could be modified. The second letter, dated January 28, 2003, stated that Norfolk had received no reply to its letter of January 7 and renewed the request that Dr. Raymond contact Norfolk with his concerns regarding Plaintiff. It is undisputed that Dr. Raymond received both letters.

4

Emerick never called Norfolk to explain why he was not producing the records, despite the fact that each letter provided a toll-free contact number. Emerick was charged with insubordination and on May 8, 2003, Norfolk held a disciplinary hearing, over which Richard Hill ("Hill") presided as the hearing officer. Emerick testified at the hearing that he signed a release, asked Dr. Raymond to send his medical records to Defendant, and was told that his records had in fact been provided to Norfolk. Hill testified that it was Emerick's responsibility to ensure that Norfolk received the requested information and that it was not an adequate defense to shift the blame to Dr. Raymond. Emerick was permitted to offer documents and testimony in his defense at the hearing, but elected not to provide a copy of the requested medical records, a copy of the medical release that he allegedly executed, or any testimony from Dr. Raymond or his staff corroborating Plaintiff's efforts to secure the requested medical records. Hill concluded that Plaintiff had committed insubordination and terminated Plaintiff's employment. Hill testified that he based his decision entirely on the testimony provided during the disciplinary hearing, which did not address whether or not Emerick had any restrictive medical conditions but was limited to the question of whether Emerick followed Norfolk's instructions as conveyed in the four letters. Plaintiff's employment was terminated for failing to personally ensure that his medical records were provided to Norfolk. Emerick subsequently accepted a full time welding position with Illig Machining.

Hill had previously terminated three other similarly situated employees for failing to provide medical records specifically requested by Norfolk. These employees had also claimed in defense that their doctors were at fault for failing to release the records. Hill did not consider this a defense, however, as the burden of complying with Norfolk's request lies with the employee.

5

Emerick has sought various administrative remedies based on the foregoing facts. On December 16, 2002, he filed charges of discrimination with the U.S. Department of Labor under the Rehabilitation Act and the Vietnam Era Veterans' Readjustment Assistance Act of 1974. The Department of Labor issued a right-to-sue letter on September 5, 2003. On August 29, 2003, Plaintiff also filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") under the ADA; the EEOC issued a right-to-sue letter on November 12, 2003. Lastly, Emerick appealed Hill's decision through the Union. In Public Law Board No. 6837, that appeal was denied. On December 8, 2003, Emerick filed the Complaint in this case, alleging that he was terminated and denied the chance to return to work because he is "disabled, regarded by Norfolk as disabled and/or had a record of disability within the meaning of the Rehabilitation Act and the [ADA], and/or in retaliation for filing charges of discrimination with the Department of Labor." Document No. 1, ¶¶ 17-18.

## III. CURRENT POSTURE

Defendant first argues in its Motion for Summary Judgment that given the statutory language of the ADA and the Rehabilitation Act, Emerick cannot prove that he was disabled, had a record of disability, or was regarded as disabled. Document No. 23, pp. 5-9. Norfolk also asserts that it never committed the required adverse employment action against Emerick: Plaintiff was placed on medical hold pursuant to company policy, not due to any disability; similarly, Plaintiff was legitimately terminated for insubordination, not for reasons that violate federal law. *Id.* at 9-13. Defendant's Motion for Summary Judgment further claims that Emerick's failure to engage in the interactive process mandated by the ADA also justifies judgment against him. *Id.* at 13-15. Lastly, Norfolk bases the Motion *sub judice* on Emerick's lack of evidence demonstrating either that his

6

termination was pretextual or that Defendant retaliated against him for filing his claim with the Department of Labor. *Id*. at 15-18.

Central to the Parties' dispute is whether Plaintiff produced the appropriate medical records. Norfolk insists that neither Emerick nor Dr. Raymond provided the information it requested in the six letters sent to those two individuals. Defendant's Statement of Undisputed Material Facts (Document No. 24), ¶¶ 29, 32, 35, 38, 43, 46 & 51. In contrast, Emerick testified at deposition that he executed the proper authorizations to permit the release of his medical records to Norfolk and that he provided his medical records from Dr. Raymond to a union representative who informed him that they would be submitted to the Defendant. Emerick Dep. Trans., pp. 92, 99-103, Document No. 25, Exh. B. Furthermore, Dr. Raymond testified that he forwarded Plaintiff's medical records to the head of Norfolk's medical department on November 12, 2003. Raymond Dep. Trans., p. 29, Document No. 27, Exh. 1. Emerick also highlights testimony showing that Dr. Raymond thought his October 23, 2002, letter to Norfolk satisfactorily addressed the areas of inquiry in Defendant's letters of January 7 and 28, 2003. Raymond Dep. Trans., p. 35, Document No. 25, Exh. F.

The Parties also contest the adequacy of the VA Records that Defendant received in December 2002. While Norfolk admits that those records document various maladies relating to the conditions described in Dr. Raymond's October 23 letter, it claims that its concern was broader than just those conditions. Defendant's Reply to Plaintiff's Statement of Undisputed Material Facts (Document No. 38), ¶ 76; Prible Dep. Trans., pp. 57-58, Document No. 27, Exh. 6. Defendant asserts that because its concern extended to Emerick's general degree of functioning, the VA Records were not responsive to its information requests. Document No. 38, ¶ 76.

7

Summary judgment is appropriate when there is no genuine issue as to any material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); FED. R.

CIV. P. 56(c).

> An issue of material fact is genuine "if the evidence is such that a reasonable jury
> could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,
> 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). In deciding a
> motion for summary judgment, all reasonable inferences must be drawn in favor
> of the non-movant. *Oritani* [*Sav. & Loan Ass'n v. Fidelity & Deposit Co.*, 989
> F.2d 635, 638 (3d Cir. 1993)].

*Troy Chem. Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-26 (3d Cir. 1994).

> As to materiality, the substantive law will identify which facts are material. Only
> disputes over facts that might affect the outcome of the suit under the governing
> law will properly preclude the entry of summary judgment. Factual disputes that
> are irrelevant or unnecessary will not be counted. *See generally* 10A C. Wright,
> A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983).
> This materiality inquiry is independent of and separate from the question of the
> incorporation of the evidentiary standard into the summary judgment
> determination.    That is, while the materiality determination rests on the
> substantive law, it is the substantive law's identification of which facts are critical
> and which facts are irrelevant that governs.    Any proof or evidentiary
> requirements imposed by the substantive law are not germane to this inquiry,
> since materiality is only a criterion for categorizing factual disputes in their
> relation to the legal elements of the claim and not a criterion for evaluating the
> evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

> Credibility determinations, the weighing of the evidence, and the drawing of
> legitimate inferences from the facts are jury functions, not those of a judge,
> whether he is ruling on a motion for summary judgment or for a directed verdict.
> The evidence of the non-movant is to be believed, and all justifiable inferences
> are to be drawn in his favor. *Adickes [v. S.H. Kress & Co.*, 398 U.S. 144, 158-
> 159, 90 S. Ct.1598, 1608-1609, 26 L. Ed. 142, 159-160 (1970)]. Neither do we
> suggest that the trial courts should act other than with caution in granting
> summary judgment or that the trial court may not deny summary judgment in a
> case where there is reason to believe that the better course would be to proceed to
> a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S. Ct. 1031, 92 L. Ed.
> 1347 (1948).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

## IV. ANALYSIS

### A. Plaintiff's ADA Claim

Suits for unlawful discrimination under the ADA follow the familiar burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Olson v. GE Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996). Accordingly, Emerick must first establish a *prima facie* case of discrimination by demonstrating that "he is a disabled person within the meaning of the ADA; he [was] otherwise qualified to perform the essential functions of [his] job, with or without reasonable accommodations by [Norfolk]; and he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Once accomplished, the burden then shifts to Defendant to provide a non-discriminatory reason for terminating Plaintiff's employment. "Once the employer articulates a legitimate reason for the unfavorable employment decision, the plaintiff must show by a preponderance of the evidence that the employer's proffered explanation was pretextual." *Olson*, 101 F.3d at 951.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). *See also Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). Federal regulations refine this language: A physical impairment is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special

9

sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine. . . ." 29 C.F.R. § 1630.2(h)(1). Major life activities that the impairment must affect are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* at § 1630.2(i). A substantial limitation is the inability "to perform a major life activity that the average person in the general population can perform," or a significant restriction "as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* at § 1630.2(j)(1)(i)-(ii). Courts should consider at least three particular factors when assessing whether or not a limitation is substantial: "the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* at § 1630.2(j)(2)(i)-(iii).[2]

## 1. Actual Disability

At the outset, it is worth noting that there is a difference between a disability and an

___

[2] The Court, of course, is not necessarily bound to the EEOC guidelines. As the Supreme Court has noted, "the persuasive authority of the EEOC regulations is less clear," in part because no agency was ever given the authority to interpret the meaning of "disability" as it is used in the ADA. *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 194, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002). *See also Collins v. Prudential Inv. & Ret. Servs.*, 119 Fed. Appx. 371, 377 (3d Cir. 2005). Apparently, no court has directly addressed the reasonableness of the regulations, however, and most that have considered the Supreme Court's dicta have not questioned past usage. *See, e.g., Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004) ("Nevertheless, the Supreme Court has previously construed the ADA in light of the EEOC regulations without deciding what deference is due the regulations, and this Court also frequently looks to the EEOC regulations for interpretive guidance."); *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 714 n.10 (8th Cir. 2003) ("However, because neither party challenges the reasonableness of the EEOC regulations, this is an issue that we need not address. Like the Court in *Toyota*, we assume without deciding that the regulations are reasonable.'") (citation omitted); *Carroll v. Xerox Corp.*, 294 F.3d 231, 239 n.8 (1st Cir. 2002) ("We have, pre-*Toyota Motor*, looked to these EEOC regulations on several occasions for guidance in applying the statutory terms under the ADA."). Courts in this district routinely apply the EEOC's guidelines and, the Parties having offered no objection, this Court feels no need to do differently.

impairment. According to the U.S. Supreme Court,

> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limit" a major life activity.

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83, 119 S. Ct. 2139, 144 L. Ed.2d 450 (1999).

Emerick first claims that an actual disability arises from the difficulty he incurs standing and walking, both major life activities within the ADA. Document No. 28, p. 5. Plaintiff relies on the medical documentation in the record, including his 40% VA disability rating, Document No. 27, Exh. 9; Dr. Raymond's October 23 letter, noting that Plaintiff receives treatment for "DJD Cervical and LS Spine" and suffers from "left shoulder and lower back pain radiating down his right leg, Document No. 27, Exh. 8; records of treatment he received in September 2002 for cervical problems and pain and numbness in his lower extremities, Document No, 27, Exh. 11, p. 3; and a past medical history of diabetes, musculoskeletal problems of the cervical spine, and musculoskeletal problems of the extremities, *id.* at 1. Emerick has also been diagnosed with neuropathy to the legs and feet, resulting in constant pain, *id.* at 5; degenerative changes with bony lipping and marginal sclerosis, narrowing of the mid-intervertebral space, and bony encroachment of the intervertebral foramina, Document No. 27, Exh. 12, p. 1; peripheral neuropathy, Document No. 27, Exh. 10, p. 3; as well as "nonsurgical degenerative joint disease of the cervical and lumbar areas," Document No. 27, Exh. 13, p. 1. The evidence further reveals that Plaintiff suffers from tingling sensations in his extremities and that he suffers from an extensive history of various

maladies, including arthritis, neck and back pain, bronchitis, kidney problems, swollen legs, and heart disease. *Id*. at 3.

While extensive, this evidence does not make the demonstration that the ADA requires. "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002). Emerick must prove his disability with "evidence that the extent of the limitation in terms of [his] own experience . . . is substantial." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567, 119 S. Ct. 2162, 144 L. Ed. 2d 518 (1999). Proof that he suffers from an ailment—even one with painful and disruptive symptoms—is not proof that the ailment substantially limits a major life activity. *See Weisberg v. Riverside Twp. Bd. of Educ.*, 180 Fed. Appx. 357, 359-60 (3d Cir. 2006) (nonprecedential opinion) (finding no disability in the face of stronger evidence of actual limitations than is present in this case). Though he acknowledges this, Emerick fails to show how the documentary evidence establishes the practical limitations his afflictions impose.

The Court can only locate evidence that Plaintiff suffers from constant pain of varying degree. In his deposition, Emerick testified that "[t]he pain . . . is always there. It's something I live with 24 hours a day. It never goes away. At times it does get worse. It's always there." Emerick Dep. Trans., p. 47, Document No. 27, Exh. 4. The pain, however, seems to have no substantial limitation on Plaintiff's functionality. Nothing in the evidence presented to the Court suggests that the pain prevents Plaintiff from standing or walking in a manner that approximates the capabilities of an average person. Plaintiff testified that he "always managed to do my job" and could "work[] through the pain." *Id*. at 49. Pain that does not substantially interfere with

12

functionality does not rise to the level of a disability under the ADA. *Marinelli v. City of Erie*, 216 F.3d 354 (3d Cir. 2000) (holding that debilitative pain is not a disability unless evidence shows how it substantially impairs a major life activity); *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180 (3d Cir. 1999) (holding that an inability to stand or walk for longer than fifty minutes at a time does not constitute a significantly limited major life activity); *Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir. 1996) (holding that plaintiff's condition, which caused him great difficulty in walking, did not make him disabled within the meaning of the ADA); *see also Berg v. Norand Corp.*, 169 F.3d 1140 (8th Cir. 1999) (holding that continuous joint pain does not substantially limit the major life activity of working).

That Plaintiff has received a 40% disability rating from the Veterans' Administration also fails to establish a genuine issue of material fact regarding whether he is disabled. Plaintiff points to three cases in support of the proposition that such a rating can have strong probative value in a disability inquiry. In the first, the court could not find that the plaintiff was substantially impaired in any major life activity, despite his constant pain and a 20% VA disability rating. *Howell v. Sam's Club # 8160/Wal-Mart*, 959 F. Supp. 260, 264-67 (E.D. Pa. 1997). In addition to the rating, the plaintiff in *Howell* suffered from numbness, arthritis, and frequent pain in his left kneel, "a limited range of motion; and, he was not able to lift over twenty-five pounds." *Id.* at 264. He also "wore a back brace and support belt while working," "needed a second person's assistance in performing job tasks that most people could perform alone," and sometimes found it difficult to breathe due to the pain and pressure in his back. *Id.* In short, Howell presented a 20% VA disability rating and evidence of physical limitations more specific and substantial than that presented in the case *sub judice*. Nonetheless, the court was still unable to discern any substantially impaired major life

13

activity.

Nor was such an impairment present in Plaintiff's second case, where the employee presented a 40% disability rating and a doctor's warning against "prolonged flexion of the knee to prevent aggravation of [an] old injury." *Faulkner v. ATC Vancom Ltd. P'shp.*, 203 F.3d 830 (9th Cir. 1999) (unpublished opinion). The *Faulkner* plaintiff argued that the "old injury" substantially impaired his ability to stand or walk for long periods of time. The record, however, demonstrated no such limitation and the court found that "although [Faulkner's] condition may be considered to be a limitation, it is not a 'substantial' one." *Id.* The VA rating, as well as plaintiff's testimony regarding "loss of mobility, severe limitations, and extreme pain" were insufficient under the ADA's first prong.

Plaintiff argues that his case is more analogous to *Evans v. Potter*, No. 02-4043, 2003 WL 24085317 (D. Md. Sept. 9, 2003), where the court relied in part on a 30% VA disability rating in its finding that Evans was disabled under the ADA. Emerick's reliance on this case is misplaced, however. In *Evans*, the court had before it evidence of much more than chronic pain. The record also demonstrated that "Evans's physicians had imposed extensive functional work restrictions," and that plaintiff "was unable to lift more than fifteen pounds and to stand or walk slowly for more than fifteen minutes." *Evans*, 2003 WL 24085317 at *5. In finding Evans disabled, the court held that it could not "say as a matter of law that [the] alleged inability to walk more than fifteen minutes or two city blocks, at slow speed, when coupled with [an] inability to stand for longer than fifteen minutes before experiencing severe pain and possible collapse, does not constitute a substantial impairment." *Id.* at *6. Instead of supporting Emerick's argument, *Evans* thus highlights its deficiency by relying on the kind of evidence fatally missing from the record now before the Court.

14

Emerick has failed to demonstrate the practical implications of his impairment and how those implications obstruct a major life activity. Though it shows he is in constant pain, the evidence does not show limited functionality. A VA disability rating was not dispositive in any of the cases on which Plaintiff relies, and it does not prove a disability in this case. Rather, Emerick's evidence analogizes his case to *Faulkner*, and the Court's actual disability inquiry ends in the same result.

The Court thus cannot find that Emerick's inability to comfortably perform the mandatory exercise regimen that preceded his shifts as a Norfolk boilermaker constitutes an ADA-protected disability. Though not insensitive to Plaintiff's condition, the Court is nonetheless unable, on the facts presented in the record, to diverge from the principle that "a physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA." *Kelly*, 94 F.3d at 108 (quoting *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995)). Emerick's failure to articulate how his condition practically obstructs a major life activity undercuts any suggestion that he suffers from an actual disability.

## 2. Record of Disability

Emerick argues that the evidence establishing his disability also constitutes a record of disability, again placing particular reliance on his 40% VA disability rating. Document No. 28, p. 6-10. However, "records of disability findings and classifications made in other proceedings do not necessarily amount to a record of impairment under the ADA." *Howell v. Sam's Club # 8160/Wal-Mart*, 959 F. Supp. 260, 267 (E.D. Pa. 1997) (citing *Dotson v. Electro-Wire Prods.*, 890 F. Supp. 982, 990 (D. Kan. 1995)). As with any claim of an actual disability, documentary evidence will not help Plaintiff circumvent the need to show some substantial impairment to a major life activity. Emerick's argument for a record of disability thus fails under a familiar burden:

15

While the evidence indicates an extensive history of medical problems, it fails to create a material issue as to whether Plaintiff has satisfied the demands imposed on him by the ADA. *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001).

### 3. Regarded as Disabled

Whether there is a genuine issue as to Plaintiff's alleged disability thus depends on whether Norfolk regarded Emerick as disabled, which could occur in any of three ways: 1) Emerick has a physical or mental impairment that does not substantially limit a major life activity but which Norfolk treated as constituting such a limitation; 2) Plaintiff suffers a physical or mental impairment that substantially limits a major life activity only as a result of the attitude of others toward such impairment; or 3) Emerick has no such impairment but was treated by Norfolk as having a substantially limiting impairment. *See Buskirk v. Apollo Metals*, 307 F.3d 160, 166-67 (3d Cir. 2002) (citing 29 C.F.R. § 1630.2(l)). This inquiry requires an assessment of what Norfolk knew about Plaintiff's condition and how it responded to that information. *Id*. at 167. "Even an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 144 (3d Cir. 1998) (en banc).

As the caselaw illustrates, a regarded-as plaintiff must still identify some major life activity and either the way that an employer believes it to be substantially impaired, or the way in which it is substantially impaired as a result of an employer's beliefs. *Buskirk*, 307 F.3d at 166-67. The Court notes that Emerick has not named the major life activity central to his regarded-as allegation, nor has he specified any substantial impairment thereof, preferring to rely instead on a generic claim of disability. Document No. 28, pp. 10-13. The Court need not address the consequences of

16

this failure, however, because the arguments as presented adequately demonstrate Plaintiff's insufficient evidentiary support.

Plaintiff principally relies on how Norfolk behaved subsequent to receiving Dr. Raymond's October 23 letter. First, Emerick cites the comment of a nurse in Defendant's medical department that he was "a liability." Document No. 28, p. 11. Specifically, Emerick testified that during a telephone conversation, Nurse Beverly Dozier "[told] me as long as I felt pain, I was a liability, I might get hurt, and they weren't going to let me work." Emerick Dep. Trans., p. 41, Document No. 27, Exh. 4.[3] Secondly, Emerick cites Norfolk's failure to provide him with a return-to-work physical, "despite its policy and procedure to conduct one after an employee has been on medical hold for 30 days." Document No. 28, p. 12. To substantiate this claim, Emerick references the testimony of Dr. Prible that at the time relevant to this case, "if somebody were out of service for more than 30 days, they would go for a return-to-work exam." Prible Dep. Trans., p. 15, Document No. 27, Exh. 6. According to Plaintiff, Nurse Dozier's "liability" comment demonstrates that Norfolk considered him disabled to the point that a return-to-work physical was pointless, while Norfolk's failure to perform a return-to-work physical indicates that Defendant had no interest in confirming or dispelling its perception. Document No. 28, p. 12.

Forced medical leave by itself will not necessarily ground a regarded-as claim, because concern for an employee is not a belief in that employee's disability. *Parker v. Port Auth.*, 90 Fed. Appx. 600 (3d Cir. 2004) (nonprecedential opinion). In *Parker*, a diabetic bus driver was not allowed to return to work until she provided medical records from her personal physician. The

---

[3] Nurse Dozier testified that she could not recall any telephone conversation with Emerick but that she "would not tell an employee he was a liability." Dozier Dep. Trans., pp. 24-25, Document No. 44. To the extent there is a factual dispute on this point, it is resolved in Plaintiff's favor.

driver was terminated after failing to do so and brought suit under the ADA. *Parker*, 90 Fed. Appx. at 602. The court rejected the argument that making Parker's return to work conditional on receiving the proper medical information established that the Port Authority considered her disabled: "Requiring an employee to submit a medical release and be cleared by her physician is not evidence that an employer regards the employee as disabled." *Id*. at 604 (citation omitted).

The court also referred to its conclusion in *Tice v. Ctr. Area Transp. Auth.* that "[d]oubts alone do not demonstrate that the employee was held in any particular regard." 247 F.3d 506, 515 (3d Cir. 2001). In *Tice*, an employee on voluntary medical leave submitted to his employer—as required by the governing labor contract—a note from his physician certifying that the employee could return to work if certain accommodations were made. The employer, however, refused to reinstate the employee unless the latter also underwent an independent medical examination. In Tice's subsequent ADA suit, the Third Circuit declined to equate imposing such a condition with a belief of disability. Though central to the analysis was a provision of the ADA not relevant here,[4] the court drew on cases that sanction employers' concern for the health and ability of their employees. *Id.* (citing *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 647 (2d Cir. 1998); *Cody v. Cigna Healthcare of St. Louis, Inc.*, 139 F.3d 595, 599 (8th Cir. 1998)).

These cases and others explain the wisdom of this principle. "Given that an employer needs to be able to determine the cause of an employee's aberrant behavior, [requiring a mental and physical examination] is not enough to suggest that the employee is regarded as mentally disabled."

---

[4] The demand that Tice undergo an independent medical examination implicated the ADA's provision concerning when such requests are appropriate, 42 U.S.C. § 12112(d). Plaintiff in this case has made no allegation that Norfolk violated that portion of the statute.

18

*Sullivan*, 197 F.3d at 810. "Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims." *Cody*, 139 F.3d at 599.

> [To hold that] placing an employee on medical leave is, by itself, sufficient evidence to create an issue of material fact regarding whether an employer regarded that employee as disabled. . . . would discourage employers from taking such preliminary or temporary steps to keep their employees happy for fear that showing concern for an employee's alleged medical problems could draw them into court facing an ADA claim based on a perceived disability.

*Kramer v. Hickey-Freeman, Inc.*, 142 F. Supp. 2d 555, 560 (S.D.N.Y. 2001) (citation omitted). *See also Yeske v. King Soopers, Inc.*, 13 Fed. Appx. 802, 804 (10th Cir. 2001) (unpublished opinion) (holding that a forced medical leave of absence does not by itself establish that an employee was regarded as disabled); *Kiphart v. Saturn Corp.*, 74 F. Supp. 2d 769, 778 (M.D. Tenn. 1999) (same), *rev'd on other grounds*, 251 F.3d 573 (6th Cir. 2001); *Sanders v. City of Chi.*, No. 98-5838, 2001 U.S. Dist. LEXIS 3477, **17-18 (N.D. Ill. March 22, 2001) (same).

The facts compel this Court to align itself with the prevailing caselaw. An employer must be able to evaluate the abilities of its employees and make informed decisions regarding the safety of its working environment. This is especially true with industrial sites like the Juniata Locomotive Shop, where workers are asked to perform physically demanding jobs around heavy equipment. *See* Emerick Dep. Trans., pp. 44, 46, Document No. 25, Exh B (describing working conditions at Juniata). Some latitude is required for decisions about how best to deal with potential safety hazards, and that latitude would be overly restricted if forced medical leave automatically gave rise to federal lawsuits. Though it seems extreme to exclude an employee from working altogether, such a policy may reflect the demands of a particular industry, the unique circumstances of a worksite, or the negotiated labor agreement between an employer and its employees' representative.

19

The Court is only in a position to second-guess such a policy on a case-by-case basis when an employer "misinterpret[s] information about an employee's limitations to conclude that" there exists some disability. *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 190 (3d Cir. 1999).

In this case, Norfolk correctly interpreted the information it had and drew a reasonable conclusion: While Plaintiff's job performance was satisfactory,[5] the suggestion of a medical problem created an ambiguity that warranted further investigation. Whenever there is doubt as to an employee's fitness for service, it is Norfolk's policy to place that employee on medical hold while additional information is gathered. *See* Prible Dep. Trans., pp. 11-12, Document No. 25, Exh. E. Such reasons for doing so can be as trivial as facial hair, *id.*, and the policy is a reflection of the company's safety concerns. Dozier Dep. Trans., p. 8, Document No. 25, Exh. I. Without additional evidence, the fact that Emerick was placed on medical hold only establishes that Norfolk harbored some doubts about his abilities. Doubted abilities are not perceived disabilities.

Plaintiff's attempts to identify additional evidence are unavailing. Assuming she actually said it, Nurse Dozier's comment only clarifies the precaution that Emerick's medical hold represented: "[she told] me as long as I felt pain, I was a liability, I might get hurt, and they weren't going to let me work." Emerick Dep. Trans., p. 41, Document No. 27, Exh. 4. The remark merely reveals a concern for workers' safety that constitutes routine grounds for medical holds and is often protected from the sweep of the ADA. *See, e.g.*, *McGeshick v. Principi*, 357 F.3d 1146 (10th Cir. 2004) (upholding summary judgment against employee under the Rehabilitation Act because, in part, an employer's safety concerns do not constitute a belief than an employee is disabled); *Krocka*

---

[5] Both of Plaintiff's immediate supervisors testified that Emerick's job performance was fully satisfactory. McManus Dep., pp. 16-17, Document No. 25, Exh. G; Patterson Dep. P. 97, Document No. 97, Exh. D.

20

*v. City of Chi.*, 203 F.3d 507, 515 (7th Cir. 2000) (finding it "entirely reasonable, and even responsible" for an employer to evaluate an employee's fitness for duty, given certain safety concerns); *Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993) (holding under the Rehabilitation Act that an employee is not regarded as disabled just because of his employer's safety concerns); *Johnson v. Norfolk S. Corp.*, No. 01-1949, 2003 U.S. Dist. LEXIS 4674 (N.D. Ill. March 26, 2003) (rejecting a regarded-as claim based on Norfolk's policy of placing an employee on medical hold for further investigation of a perceived safety risk); *Ellis v. Mohenis Servs.*, No. 96-6307, 1998 WL 564478, at * 5 (E.D. Pa. 1998) (denying reconsideration of an earlier grant of summary judgment in an employer's favor on the same basis); *see also* 42 U.S.C. § 12113(b) (allowing employers to set a qualification standard "that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace"); 42 U.S.C. § 12112(d)(4)(A) (allowing employers to require that an employee undergo a medical examination when it is "job-related and consistent with business necessity"). Nurse Dozier's statement articulates—albeit somewhat curtly—the concerns that motivated Emerick's medical hold; as a matter of law, such caution does not belie the more malignant belief that an employee is disabled.

Emerick also construes an alleged failure to investigate his functional capacity as evidence that Norfolk regarded him as disabled. But this argument ignores Norfolk's attempts to learn the full extent of Plaintiff's capabilities. Dr. Prible testified that "[t]he real issue that we were after was functioning, [Emerick's] degree of functioning, and the [VA Records] really don't speak to that at all." Prible Dep. Trans., pp. 55-56, Document No. 25, Exh. E. To remedy this absence, Dr. Prible sent two requests to Dr. Raymond and "specifically asked . . . questions that I would have found very helpful to ascertaining Mr. Emerick's fitness for duty." *Id.* at 57. There are also the four

21

requests Norfolk sent Emerick. Plaintiff instead emphasizes the probative value of Norfolk's alleged policy "to conduct [a return to work physical] after an employee has been on medical hold for 30 days." Document No. 28, p. 12. To Plaintiff, that Norfolk contravened its own policy in his case and did not order such an examination suggests the company's persistent belief that Emerick was disabled.

It is not so clear, however, that Plaintiff has accurately described Defendant's policy. Plaintiff is apparently relying on Dr. Prible's testimony that at the time of "Mr. Emerick's case . . . if somebody were out of service for more than 30 days, they would go for a return-to-work exam." Prible Dep. Trans., p. 15, Document No. 27, Exh. 6. This statement does not necessarily mean that it was Norfolk's policy to send such employees for medical examinations. The notion that all employees on hold for more than 30 days were automatically examined also stands in contrast with Dr. Prible's later testimony: "Q: Hypothetically, . . . let's say that [Dr. Raymond said] 'I don't have any other records.' So basically what [Norfolk] had was everything that Mr. Emerick had to provide. Would Mr. Emerick [have then received] a fee-for-service physician examination? A: Well, it depends." *Id*. at 57. But even construing this point in a light most favorable to Emerick, Dr. Prible still testified that he would not send Plaintiff for a medical examination without first receiving at least a response from Dr. Raymond. *Id*. at 58.

In short, there seems to have been nothing unusual in how Defendant handled Emerick's case. Norfolk was immediately interested in the nature of Emerick's impairment and abilities. When it learned there was some question as to Plaintiff's fitness, it followed routine procedure and placed Emerick on medical hold while it made further investigation. Its subsequent efforts—including six different letters to Plaintiff and Dr. Raymond—contradict Emerick's

contention that Norfolk made no attempt to ascertain his abilities and refute any suggestion that Norfolk believed Emerick to be unable to work. The information available to Norfolk was that Emerick was satisfactorily performing his job but apparently suffered some impairment that could affect his full capabilities. Defendant did not misinterpret any facts or draw any conclusions about Plaintiff's functionality. Under the facts of this case, a reasonable jury could not conclude that Norfolk regarded Emerick as a disabled employee. An employer does not face ADA liability only because it demonstrates abundant caution in prioritizing the safety of its workplace and addressing doubts about an employee's capabilities.

## B. Plaintiff's Rehabilitation Act Claim

The Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, employs the same definition of disability as that found in the ADA. *Compare* 29 U.S.C. § 705(20)(A)(i) (defining "individual with a disability" as one with a "physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment") *with* 42 U.S.C. § 12102(2)(A)-(C) (defining "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities"); *see also Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193-96, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002) (conflating ADA and Rehabilitation Act definitions); *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.") (citation omitted); *Greb v. Potter*, 176 Fed. Appx. 260, 262 (3d Cir. 2006) (nonprecedential opinion) ("Under the [Rehabilitation] Act, a disability is any impairment that substantially limits at least one major life activity."); 29 C.F.R. § 1614.203(b) ("The standards used to determine whether section 501 of the Rehabilitation Act of 1973 . . . has been violated . . . shall be the standards . . . of the

23

Americans with Disabilities Act of 1990 . . . ."). Because Plaintiff must satisfy the same standard under both Acts, his failure to prove a genuine issue of material fact regarding his disability under the ADA, as already discussed, also demonstrates why his cause of action under the Rehabilitation Act cannot survive. *See McDonald v. Pennsylvania*, 62 F.3d 92, 96 (3d Cir. 1995) (dismissing a Rehabilitation Act claim where the plaintiff was unable to demonstrate a disability under the ADA").

## C. Plaintiff's Retaliation Claim

Norfolk has also moved for summary judgment on Emerick's retaliatory firing claim. The Complaint alleges that Emerick's employment was terminated and Plaintiff was denied the chance to return to work "because Emerick was disabled . . . and/or in retaliation for charges of discrimination with the Department of Labor." Document No. 1, ¶¶ 17, 18. A *prima facie* claim for retaliation under the ADA[6] requires that Plaintiff show he engaged in a protected activity, that Norfolk took adverse action contemporaneous with or subsequent to that activity, and that a causal connection links the latter to the former. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004). "Temporal proximity alone is insufficient to establish the required causal connection when temporal proximity is not unusually suggestive." *Zelinski v. Pa. State Police*, 108 Fed. Appx. 700, 706 (3d Cir. 2004) (nonprecedential opinion) (citation omitted). At the same time, "[w]hen there may be a valid reason why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation."

---

[6] Under 42 U.S.C. § 12203(a), "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." As conceived by the Third Circuit, "it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003).

*Id.* (citation omitted). The degree of suggestiveness is factually sensitive: "[A] ten-month time period . . . is not as 'unusually suggestive' as [a] two-day period . . . but is more 'suggestive' then [a] nineteen-month period of time." *Id.*

Defendant's Motion asserts that "Emerick failed to provide any evidence that would prove a causal nexus between his protected activity . . . and his termination for insubordination." Document No. 23, pp. 17-18. According to Norfolk, Plaintiff's only evidence of retaliation is his self-serving and conclusory deposition testimony. In the event the Court does find a causal nexus between Emerick's December 2002 complaint with the Department of Labor and his termination in May 2003, Norfolk also argues that Plaintiff has not shown the proffered reason for his firing —insubordination—to be a pretext for discrimination. *Id.* at 18.

Emerick makes no attempt to suggest that any other evidence supports his retaliation claim, his opposition to Defendant's Motion does not address the issue, and the Court can find no evidence in the record that suggests the causation necessary for a *prima facie* case of retaliation. Emerick filed his complaint with the Department of Labor on December 16, 2002, and was terminated from Norfolk on May 15, 2003. In *Zelinski*, a ten-month interim, combined with other factors, established the necessary causation. *Zelinski*, 108 Fed. Appx. at 705-08. While the interval in this case is less than six months, the additional factors militate against Plaintiff. The roots of Norfolk's adverse action predate the protected activity that allegedly prompted the retaliation. Emerick was placed on medical hold over five weeks before he complained to the Department of Labor and the months between December 2002 and May 2003 contain five separate attempts by Norfolk to obtain the information required to take Plaintiff off medical hold. Not only does Defendant's conduct suggest efforts to redress the substance of Emerick's December 16 complaint, but it also

demonstrates the kind of consistency that can dilute the suggestiveness of temporal proximity in a retaliation analysis. *Cf. Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (noting that "a plaintiff may establish the connection by showing that the employer gave inconsistent reasons for terminating the employee"). More evidence than the temporal proximity between Plaintiff's Department of Labor complaint and his termination as Defendant's employee is needed to establish causation in this case. Because none exists, Plaintiff's retaliation claim cannot survive.

## V. CONCLUSION

Because Emerick is unable to create any genuine issue of material fact regarding his alleged disability, the Court need not determine whether he is otherwise qualified for his position, whether being placed on medical hold or terminated constituted adverse employment decisions, or whether Norfolk's proffered reasons for these decisions are pretextual. Also irrelevant is the interactive process that followed Plaintiff's placement on medical hold. The governing law and the evidentiary record before the Court compel the conclusion that Plaintiff suffered no disability that comes within the purview of either the ADA or the Rehabilitation Act. His lawsuit must therefore fail.

An appropriate Order follows.

**AND NOW**, this 12th day of December, 2006, in accordance with the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED** that Defendant Norfolk Southern Railway Company's Motion for Summary Judgment (Document No. 22) is **GRANTED**.  Accordingly, the Clerk of Court shall enter judgment in favor of the Defendant and against Plaintiff Nick J. Emerick.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc: All counsel of record**